1
2
3
4
5
6
7
8      **UNITED STATES DISTRICT COURT**

9      **SOUTHERN DISTRICT OF CALIFORNIA**

10     | JORGE ANTHONY CARRASCO aka | CASE NO. 14cv1645-WQH-DHB |
       | TONY CARRASCO MOTORS; and | |
11     | NANCY JEAN CARRASCO, an | **ORDER** |
       | individual, | |
12
                                    Plaintiff,
13                  vs.
14     STANLEY IVAN HORWITZ, an
       individual; ANITA HORWITZ, an
15     individual; THE SPRING STAR
       TRUST, a Trust; KENNETH G.
16     ADAMS REVOCABLE TRUST dtd
       05/14/93; and ALAN G. HORWITZ,
17     individually and as trustee of the Star
       Spring Trust and Kenneth G. Adams
18     Revocable Trust; and DOES 1 through
       50,,
19
                                    Defendant.
20     HAYES, Judge:

21          The matters before the Court are the Motion to Dismiss Plaintiffs' Second

22     Amended Complaint filed by Defendants Alan G. Horwitz, Kenneth G. Adams

23     Revocable Trust, and The Star Spring Trust (ECF No. 8) and the Motion to Dismiss

24     Plaintiffs' Second Amended Complaint filed by Defendants Stanley Horwitz and Anita

25     Horwitz (ECF No. 9).

26     **I. Background**

27          On January 29, 2013, Plaintiffs Jorge Anthony Carrasco and Nancy Jean

28     Carrasco commenced this action by filing a complaint in San Diego County Superior

Court.  (ECF No. 1 at 2).  On June 14, 2014, Plaintiffs filed a second amended complaint, which is the operative pleading (hereinafter "Complaint").  *Id.*  On July 11, 2014, Defendants Alan Horwitz, The Star Spring Trust, and the Kenneth G. Adams Revocable Trust removed to this Court pursuant to 28 U.S.C. § 1441(a) on the basis of federal question jurisdiction.  (ECF No. 1).   The notice of removal states that the removing Defendants have obtained the consent of Defendants Stanley Ivan Horwitz and Anita Horwitz.  (ECF No. 1-3 at 2).

On July 22, 2014, Defendants Alan Horwitz, Kenneth G. Adams Revocable Trust, and The Star Spring Trust (collectively "the Trust Defendants") filed the Motion to Dismiss Plaintiffs' Second Amended Complaint.  (ECF No. 8).  On July 25, 2014, Defendants Stanley Horwitz and Anita Horwitz filed the Motion to Dismiss Plaintiffs' Second Amended Complaint.  (ECF No. 9).  On August 25, 2014, Plaintiffs filed oppositions to the motions to dismiss.  (ECF Nos. 15-16).  On August 29, 2014, Defendants filed replies in support of their respective motions to dismiss.  (ECF Nos. 18-19).

## II. Allegations of the Complaint

Plaintiffs owned a used car business known as Tony Carrasco Motors, "which was located at 9020 Campo Road, Spring Valley, California since approximately 1997." (ECF No. 1-2 at 5).  "Beginning in approximately 1997, Plaintiff, Jorge Anthony Carrasco entered into a oral partnership agreement with Defendant Stanley Ivan Horwitz ('Stan Horwitz') and his wife Anita Horwitz under which Anita Horwitz represented she would initially invest $400,000.00 in the Company and Stan Horwitz would become the financial manager of the Company, not as an employee, but a partner who would share in the profits with his wife, Anita Horwitz."  *Id.*  "It was verbally agreed that Stan Horwitz would be in charge of all financial aspects of the business including, but not limited to, dealing with Plaintiffs' tax returns, accounts payable, accounts receivable, cash and check deposits, bookkeeping, and bank deposits.  At no time did Defendants disclose their criminal, bankrupt and insolvency history to

Plaintiffs." *Id.* "Defendants further did not invest $400,000 on November 1, 1997 as stated, but provided funds for car purchases for resale over a lengthy period beginning in or about October of 1997." *Id.*

"This arrangement was similar to a 'flooring' or re-sale car financing agreement with Defendants claiming to invest original funds for purchase of the cars for resale. In fact, starting in October of 1997, Defendant Anita Horwitz invested money for the purchase of cars in Tony Carrasco Motors while she owed more than $10,000,000 in civil judgments to the banks who were criminally defrauded in 1989 to 1992 and continuing to the present." *Id.*

Between 1997 and 2011, Defendant Stan Horwitz was responsible for collecting payments made to Tony Carrasco Motors and depositing them into the Company's bank account. "Tony Carrasco was not involved in the financial aspects of the business handled by Stan Horwitz.... Tony Carrasco had put his full and complete trust, faith and confidence in Stan Horwitz and, in fact, relied upon him to carry out the financial duties that Tony Carrasco was not sophisticated enough to handle in part due to the onset of Parkinson's disease later in the partnership and enterprise Defendants created." *Id.* at 6.

In May of 1992, Defendant Stanley Horwitz was convicted of felony fraud arising from his operation of several car dealerships "out east" and he "declared bankruptcy" in 1990, which was "converted to a Chapter 7 on June 22, 1992." *Id.* at 6-7. Defendants Stanley and Anita Horwitz have had numerous civil judgments entered against them arising from their operation of prior automobile dealerships. None of these facts were known to the Plaintiffs.

"On August 26, 1999, Plaintiffs, as one half owners, and Anita Horwitz as the other half owner, purchased the location at 9020 Campo Road, Spring Valley, California where Tony Carrasco Motors was located." *Id.* at 7. After receiving a "recorded judgment on or about November 14, 2001, Defendant Anita Horwitz, through the help and assistance of Defendant Star Springs Trust [sic], Alan Horwitz Trustee,

transferred her one half interest in the property at 9020 Campo Road to 'Star Spring Trust, Alan Horwitz, Trustee' on April 9, 2003.  This transfer aided and assisted in keeping Defendants' illegal and fraudulent enterprise concealed from Plaintiffs and the governing authorities for motor vehicle sales in California.  The transfer of this one half interest worked as a fraud on the federally insured creditor who levied the $5,507,195.47 judgment through recording of the abstract of judgment against Anita Horwitz." *Id.* at 7-8.  This transfer, recorded in San Diego on April 9, 2003, and done "through U.S. Mails" constituted "mail fraud." *Id.* at 24.

"Had Plaintiff Jorge Carrasco known of the felony fraud conviction, the bankruptcy arising from the operation of automobile dealerships and/or the civil judgments against Anita Horwitz arising from the operation of those automobile dealerships, Plaintiff would not have gone into business with defendants." *Id.* at 8. "Plaintiff Jorge Carrasco, due to the total failure to disclose any of these material facts, became an unwitting participant in Defendants' unlawful enterprise which allow Defendants Anita Horwitz and Stanley Horwitz to profit from an automobile dealership in California without any disclosure or licensure of their participation in the Tony Carrasco Motors car dealership." *Id*.  Such disclosure is required under California law. "Defendants used the mails to further their unlawful enterprise by mailing the Grant Deed for the real property transferred to" the Star Spring Trust to Alan Horwitz. *Id.* at 8.

Beginning in 1999, Plaintiffs considered incorporating Tony Carrasco Motors, but "Defendant Stanley Horwitz advised Plaintiffs that the use of the corporate entity would be too extensive." *Id.*  This advise was a "ruse to prevent Plaintiffs from changing the structure of the business," which would have required disclosures to the California Department of Motor Vehicles. *Id.* at 9.

In 2003, Defendant Stanley Horwitz began signing checks on the Tony Carrasco Motors account to pay personal expenses. "Defendants failed to and continued to fail to inform Plaintiffs of the prior felony fraud conviction, the automobile dealership

bankruptcy and the civil judgments arising from the operation of dealerships." *Id*. "The Tony Carrasco Motors enterprise sold vehicles in Mexico and received trade-ins from various states which required title transfers between states and affected interstate commerce." *Id.*

"In approximately the summer of 2011, Tony Carrasco became concerned that cash flow of the Company had reached a point where an additional investment was required in order to keep business going." *Id.* "Plaintiff Tony Carrasco asked his wife, Nancy Jean Carrasco, to start coming into the office in order to find the source of their cash flow difficulties." *Id.* at 10. "Through a detailed comparison of ... receipts, with each bank deposit made for the period of 2005 through 2011, it was discovered that approximately $1,678,000.00 or more was missing from the business." *Id.* "After tracking missing cash funds which Stanley Ivan Horwitz was to deposit, Plaintiffs discovered that Defendants had embezzled the cash and would occasionally launder the cash stolen from Tony Carrasco Motors through various accounts." *Id.* On many occasions, "a check in the amount of the missing cash funds was written to 'Tony Carrasco Motors' from Stanley Ivan Horwitz with the designation of 'loan' on the check." *Id.* "Plaintiffs are informed and believe that Defendants also laundered more than $100,000 of embezzled funds through Barona Casino and into their own accounts." *Id.*

Defendant Stan Horwitz was not depositing all of the cash he received from the business. Instead of depositing it, "he would keep the money for himself, his wife Anita, and to maintain the real property at 2133 Corte Dorado Espuela, Alpine, California." *Id.* at 11. "The title to the property is held in the Kenneth G. Adams Family Trust name," and Defendant Alan G. Horwitz is trustee. *Id.*

As a result of the theft, "Tony Carrasco Motors was forced to periodically borrow large sums of money from Nick Romeo so that it would have sufficient cash flow to run its business." *Id.*

The Complaint asserts two Racketeer Influenced and Corrupt Organization Act

("RICO") claims, for violations of 18 U.S.C. sections 1962(a) and 1962(c), and various state-law claims.

## III.  Motions to Dismiss (ECF Nos. 8 and 9)

The motions to dismiss seek dismissal pursuant to Rule 12(b)(6) as to Plaintiffs' fourth, fifth, and sixth claims for violation of 18 U.S.C. section 1962(a), violation of 18 U.S.C. section 1962(c), and constructive trust, respectively.  Defendants request that each claim be dismissed without leave to amend.  Plaintiffs oppose the motions to dismiss and request leave to amend in the event that the Court identifies deficiencies in the Complaint.

### A.  12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id*. (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

### B. Violation of 18 U.S.C. section 1962(a) (Fourth Claim)

Plaintiffs' fourth claim alleges that Defendants racketeering activity included their prior operation of automobile dealerships "which led to Defendant Stanley Horwitz's felony conviction for bank fraud in May of 1992, his bankruptcy dismissed in April of 1997 and the more than $10,000,000 dollars of civil judgments against Defendant Anita L. Horwitz which were still due and owing as of January 1, 2011." (ECF No. 1-2 at 18). Plaintiffs' fourth claim alleges that Defendants formed an enterprise with Tony Carrasco Motors to conceal their prior criminal fraud, bankruptcy, and civil liabilities. Plaintiffs' fourth claim alleges that "[i]n or about October of 1997, Defendant Anita Horwitz began investing funds from Defendants' racketeering activities in automobiles to be resold at Tony Carrasco Motors." *Id.* Plaintiffs' fourth claim alleges that, "[s]tarting no later than 2001 and continuing until at least July of 2011, Defendants began embezzling money from Plaintiffs." *Id.* Plaintiffs' fourth claim alleges that the embezzled funds from Tony Carrasco Motors were laundered and reinvested in Tony Carrasco Motors. Plaintiffs' fourth claim alleges that Plaintiffs were damaged from the embezzlement of funds from Tony Carrasco Motors.

All Defendants move to dismiss Plaintiffs' fourth claim on the following grounds: (1) Plaintiffs have failed to sufficiently allege facts to show that the alleged racketeering activity affects interstate commerce; (2) Plaintiffs have failed to sufficiently allege facts to show that they were injured by the use or investment of Defendants' alleged racketeering income; and (3) Plaintiffs fourth claim is time-barred.

The Trust Defendants move to dismiss Plaintiffs' fourth claim on the following additional grounds: (1) Plaintiffs have failed to sufficiently allege racketeering activity; (2) Plaintiffs have failed to plead a pattern of racketeering activity; and (3) Plaintiffs have failed to allege that the Trust Defendants received any income from the alleged embezzlement activities of Stanley and Anita Horwitz.

18 U.S.C. section 1962(a) provides, in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). "A violation of 18 U.S.C. § 1962(a) requires proof of the following elements: (1) a person receives income derived directly or indirectly from a pattern of racketeering activity; (2) that person uses or invests, directly or indirectly, any part or proceeds of such income in the acquisition of any interest in, or the establishment or operation of any enterprise; and (3) that enterprise is engaged in or its activities affect interstate or foreign commerce." *United States v. Robertson*, 15 F.3d 862, 868 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 669 (1995). "[A] plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.*, 981 F.2d 429, 437 (9th Cir.1992). This "investment injury" must be "separate and distinct from the injury flowing from the predicate act...." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008). "Reinvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation." *Id.*

### i. Income Derived Directly or Indirectly from a Pattern of Racketeering Activity

The Trust Defendants contend that Plaintiffs have failed to sufficiently allege

racketeering activity because Plaintiffs have failed to plead mail fraud, the only racketeering activity identified in the Complaint, with the requisite particularity. The Trust Defendants contend that Plaintiffs have failed to plead a pattern of racketeering activity because Plaintiffs have only alleged one instance of mail fraud. The Trust Defendants contend that Plaintiffs have failed to allege that the Trust Defendants received any income from the alleged embezzlement activities of Stanley and Anita Horwitz or through Alan Horwitz allegedly fraudulent transfer of beneficial ownership of Stanley and Anita Horwitz's home to the Kenneth G. Adams Trust.

Plaintiffs contend that the Complaint alleges that Defendants received income from racketeering activity in the following regards: (1) bank fraud through fraudulent transfers to conceal "all assets, income and anything trangible that a bank judgment creditor could attach[;]" (2) "laundering of the stolen money back through the car dealership and Barona Casino[;]" (3) tax fraud through Stanley Horwitz declaring only $4,000 a month in taxes; and (4) Defendant Alan Horwitz's receipt of a beneficial interest in the property at 2133 Corte Dorado Espuela. (ECF No. 15 at 13-14).

The RICO statute enumerates the crimes that constitute "racketeering activity." 18 U.S.C. § 1961(1). The RICO statute defines "pattern of racketeering activity" as "at least two acts of racketeering activity...." 18 U.S.C. § 1961(5).

In this case, the Complaint alleges that Defendants generated income through their prior operation of car dealerships, "which led to Defendant Stanley Horwitz's felony conviction for bank fraud in May of 1992, his bankruptcy dismissed in April of 1997 and the more than $10,000,000 dollars of civil judgments against Defendant Anita L. Horwitz which were still due and owing as of January 1, 2011." (ECF No. 1-2 at 18). The Complaint fails to allege any facts to support the conclusory allegation that income was generated through racketeering activity. The Court concludes that Plaintiffs have failed to allege facts to show "a person receives income derived directly or indirectly from a pattern of racketeering activity." *Robertson*, 15 F.3d at 868.

**ii. Investment of Racketeering Income in an Enterprise**

Plaintiffs allege that Defendants received racketeering income through their embezzlement from Tony Carrasco Motors and laundered and reinvested that stolen money back into Tony Carrasco Motors.  Plaintiffs allege that embezzled funds were used to maintain "real property at 2133 Corte Dorado Espuela, Alpine, California[,]" which was "held in the Kenneth G. Adams Family Trust name."  (ECF No. 1-2 at 11). Plaintiffs allege that Defendants formed an enterprise with Tony Carrasco Motors.

The Court finds that Plaintiffs' allegation—that Defendants reinvested embezzled funds from Tony Carrasco Motors back into Tony Carrasco—is not sufficient to show investment of racketeering income in an enterprise. *See Sybersound Records*, 517 F.3d at 1149 ("Reinvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation.").  The Court further finds that Defendants' alleged use of funds embezzled from Tony Carrasco Motors to maintain property at 2133 Corte Dorado Espuela does not permit the plausible inference that Defendants "use[d] or invest[ed], directly or indirectly, any part or proceeds of [racketeering income] in the acquisition of any interest in, or the establishment or operation of any enterprise." *Robertson*, 15 F.3d at 868.  Plaintiffs have alleged no facts demonstrating that 2133 Corte Dorado Espuela is connected to the alleged enterprise consisting of Defendants and Tony Carrasco Motors. The Court concludes that Plaintiffs have failed to allege facts to show investment of any racketeering income.

### iii.  Conclusion

Defendants' motions to dismiss Plaintiffs' fourth claim are granted.

### C.  Violation of 18 U.S.C. section 1962(c) (Fifth Claim)

Plaintiffs' fifth claim alleges that Defendants and Tony Carrasco Motors formed a partnership or association in fact with a "common purpose ... to buy and sell used cars both in retail and wholesale for profit."  (ECF No. 1-2 at 21).  Plaintiffs' fifth claim alleges that Defendant Stanley Horwitz was employed with the enterprise for more than eleven years, Defendant Anita Horwitz was associated as an unnamed partner and

invested in the business's automobiles, Defendant The Star Spring Trust held title to the business's property, Defendant Alan Horwitz visited the business, and Defendant Kenneth G. Adams Family Trust owned Stanley and Anita Horwitz's home, which benefitted from funds from Tony Carrasco Motors. Plaintiffs' fifth claim alleges that Defendants' predicate acts include bank fraud arising from the operation of an automobile dealership (for which Defendant Stanley Horwitz was convicted), investment of this prior fraud in Tony Carrasco Motors, embezzlement from Tony Carrasco Motors, mail fraud in Defendants failure to disclose "on dealer salesmen licenses their participation in the dealership which occurred every year in June of each year when licenses were required," concealment of their criminal, bankruptcy, and civil judgment history, and fraudulent transfer of the business's property from Anita Horwitz to the Star Spring Trust. *Id.* at 23. Plaintiffs' fifth claim alleges that they have been damaged by Defendants' embezzlement of funds from Tony Carrasco Motors.

All Defendants move to dismiss Plaintiffs' fifth claim on the following grounds: (1) Plaintiffs have failed to allege an unlawful enterprise; (2) Plaintiffs have failed to allege facts showing that Defendants' racketeering activities proximately caused Plaintiffs' injuries; and (3) Plaintiffs' RICO claim is time-barred.

The Trust Defendants move to dismiss Plaintiffs' fifth claim on the following additional grounds: (1) Plaintiffs have failed to allege facts showing that the Star Spring Trust, the Keneth G. Adams Revocable Trust, or Alan Horwitz directed the affairs of the alleged enterprise; and (2) Plaintiffs have failed to plead facts demonstrating a pattern of racketeering activity.

Defendants Stanley and Anita Horwitz move to dismiss Plaintiffs' fifth claim on the grounds that Plaintiffs lack standing to sue under RICO based on Defendant Stanley and Anita Horwitz's alleged concealment of their alleged past activities or embezzlement from Tony Carrasco Motors.

### i. Conducting or Participating in the Affairs of an Enterprise

The Trust Defendants contend that Plaintiffs have failed to allege facts to show

that the Trust Defendants directed the affairs of the alleged enterprise.  The Trust Defendants contend that their participation in the enterprise was "marginal." (ECF No. 8-1 at 17).  Plaintiffs contend that Defendant Alan Horwitz participated in the enterprise because he held a one-half ownership interest in the real property where the enterprise was operated from April 2003 until December 2, 2011.  Plaintiffs contend that holding title to this property "satisfied the enterprise's goal of concealing Anita Horwitz's interest in the real property; her interest in the business and defrauding the bank judgment creditor and Plaintiffs."  (ECF No. 15 at 15).  Plaintiffs contend that Defendant Alan Horwitz participated in the enterprise in his role as "trustee and beneficiary of the real estate at 2133 Corte Dorado Espuela" from 2004 to the present. *Id.* at 16.

Section 1962(c) prohibits "any person employed by or associated with any enterprise" from "conduct[ing] or [participating], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...."  18 U.S.C. § 1962(c).  "[A]s both a noun and a verb in this subsection 'conduct' requires an element of direction." *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993).  Participate is to be read consistently with "a common understanding of the word 'participate'—'to take part in.'" *Id.* at 179.  "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Id.* "[O]ne is not liable under [section 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id.* at 183.

In this case, the Complaint alleges that the enterprise "included the partnership and/or association-in-fact of Tony Carrasco Motors and Defendants Anita and Stanley Horwitz, The Star Spring Trust, Alan Horwitz Trustee and the Kenneth G. Adams Family Trust.  The common purpose of Tony Carrasco Motors and Defendants Anita and Stanley Horwitz was to buy and sell used cars both in retail and wholesale for profit." (ECF No. 1-2 at 21).  The Complaint alleges no facts plausibly suggesting that Defendants Alan Horwitz, the Star Spring Trust, or the Kenneth G. Adams Family Trust

participated in operation or management of the alleged enterprise of buying and selling used cars.

The Trust Defendants' motion to dismiss Plaintiffs' fifth claim is granted. Plaintiffs' fifth claim is dismissed as to Defendant Alan Horwitz, The Star Spring Trust, and the Kenneth G. Adams Family Trust.

### ii. Enterprise

Defendants contend that the Complaint fails to adequately describe the structure of the alleged enterprise, its mechanism for directing its affairs, or how the members of the enterprise are affiliated. Plaintiffs contend that they need not allege a specific structure of the enterprise. Plaintiffs contend that the alleged enterprise need not have an illegal purpose.

RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In order to allege an association-in-fact enterprise, a plaintiff must allege: (1) "a group of persons associated together for a common purpose of engaging in a course of conduct," (2) "an ongoing organization, either formal or informal," and (3) "the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552-53 (9th Cir. 2007).

In this case, the Complaint alleges that the enterprise consists of Tony Carrasco Motors and all Defendants in this case. The Complaint alleges that the enterprise's purpose was to buy and sell used cars. The Complaint alleges that Defendant Alan Horwitz transferred Defendant Anita Horwitz's ownership interest in the real property on which Tony Carrasco Motors is located to the Star Spring Trust, of which Defendant Alan Horwitz is trustee. The Complaint alleges that the Kenneth G. Adams Family Trust holds title to Defendant Stanley and Anita Horwitz's residence.

The Complaint fails to allege any facts demonstrating that Defendants Alan Horwitz, The Star Spring Trust, or the Kenneth G. Adams Family associated with Defendants Stanley and Anita Horwitz and Tony Carrasco Motors. The Complaint fails

to allege any facts demonstrating that all Defendants and Tony Carrasco Motors formed "an ongoing organization, either formal or informal." *Odom*, 486 F.3d at 552. The Court concludes that the Complaint fails to adequately allege an enterprise. Defendants' motions to dismiss Plaintiffs' fifth claim is granted.

### D. Constructive Trust (Sixth Claim)

All Defendants move to dismiss Plaintiffs' sixth claim for constructive trust.

Defendants removed this case from San Diego County Superior Court on July 11, 2014 on the basis of federal question jurisdiction. (ECF No. 1). The notice of removal does not assert diversity jurisdiction as a basis for removal.

The federal supplemental jurisdiction statute provides: "In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Having dismissed both federal claims asserted by Plaintiffs against Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiffs' constructive trust claim pursuant to 28 U.S.C. § 1367(c). *See San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).

### III. Conclusion

IT IS HEREBY ORDERED that Defendants' motions to dismiss (ECF Nos. 8-9) are GRANTED. Plaintiffs' fourth and fifth claims for violations of RICO are

DISMISSED.  No later than **thirty (30) days** from the date this Order is filed, Plaintiffs may file a motion for leave to file a first amended complaint.  If no motion for leave to file a first amended complaint is filed, Defendants shall show cause as to why this case should not be remanded to state court within **twenty (20) days** of the expiration of the thirty-day period.

DATED:  January 7, 2015

**WILLIAM Q. HAYES**
United States District Judge